KARCZAG PUBLISHING Co., INC., Respondent, *v.* SHUBERT THEATRICAL COMPANY and Others, Appellants.

First Department, February 15, 1918.

Contracts — action for breach of contract for production of musical play — contract construed — alleged violation of rights of publication — parties — " person with whom or in whose name a contract is made."

In an action for the breach of a contract for the production of a musical play, originally written in German, because of alleged violation of plaintiff's reserved right of publication of songs and lyrics extracted from the play, it appeared that said rights were reserved to the plaintiff subject to the qualification " but this applies only to numbers belonging to the Karczag Publishing Co., and to no other songs or interpolations." The contract further provided as follows: " The party of the second part further agrees that it will not make any more alterations, cuts or additions in its English version of the said play than appear to it or the producer necessary or desirable for the success of the said play, and in case the Karczag Publishing Company does not furnish interpolations satisfactory to it or the producer, or does not deliver such as may at such times prior to the production, be requested by the second party, then the party of the second part may make interpolations of any songs as may be necessary in its judgment, and to obtain such songs, musical numbers or interpolations elsewhere."

*Held*, that the meaning of the above provision was that the party of the second part, the Shubert Company, or its producer, was to be the sole judge of what alterations, cuts or additions were necessary, and were bound to accept only such interpolations as it or he found satisfactory. Said provision of the contract cannot be construed as limiting the Shubert Company in obtaining satisfactory interpolations so that it could seek them elsewhere only after the plaintiff had been requested to furnish them and had refused or had furnished unsatisfactory ones.

Since the Shubert Company retained the publishing rights of the interpolations, which it obtained elsewhere, and since it is only regarding these numbers that plaintiff complains, it has no cause of action.

The plaintiff being a mere agent of the party of the first part to the contract, and its only interest in collections made thereunder being the stipulated percentage which it is entitled to retain, it is not " a person with whom or in whose name a contract is made for the benefit of another " within the meaning of section 449 of the Code of Civil Procedure, so as to render it competent to sue.

APPEAL by the defendants, Shubert Theatrical Company and others, from an order of the Supreme Court, made at

the New York Special Term and entered in the ffice of the clerk of the county of New York on the 7th day of July, 1917, overruling their demurrer to the amended complaint.

*Charles H. Tuttle* of counsel [*William Klein* with him on the brief; *William Klein*, attorney], for the appellants.

*M. L. Malevinsky* of counsel [*Dennis F. O'Brien* with him on the brief; *O'Brien, Malevinsky & Driscoll*, attorneys], for the respondent.

Scott, J.:

This action is for the recovery of damages for breach of a contract for the production of a musical play, the particular breach charged being an alleged violation of plaintiff's reserved right of publication. The plaintiff founds its claim to the so-called publishing rights upon three documents which are annexed to and form a part of the complaint. The first document, denominated Exhibit A, is a contract between one Wilhelm Karczag, of Vienna, Austria, described as " Wiener Verlag," of the first part and Felix and Hugo Meyer, of New York, of the second part. By this contract the Messrs. Meyer undertake to organize in New York a corporation to be known as the " Karczag Publishing Company  *  *  *  for the purpose of exploiting in the United States of North America, Canada, Mexico and Cuba the rights for the sale and publication as per this agreement with the Wiener Verlag." The Messrs. Meyer also agreed " to transfer the rights and duties set forth in this contract to the Karczag Publishing Company to be founded, and guarantee that said corporation shall immediately after the formation enter into the present contract." On its part the Wiener Verlag agrees " to give to this Karczag Publishing Company the entire selling rights and publishing rights of all works already appearing in their publishing business, or to be published in the future for the territory mentioned in paragraph one, without any further expenses." Exception is made of works which the Wiener Verlag may acquire, but as to which they do not acquire selling or publishing rights in the territory mentioned. As to them the Wiener Verlag agrees to pay to the Karczag Publishing Company one-half of whatever it may realize from another American agent. The contract contains somewhat

specific agreements as to how the business of the Karczag Company is to be carried on. The Karczag Company is to retain from all collections of royalties or any other sources derived from theatrical productions ten per cent and the Wiener Verlag agrees to pay to said company ten per cent of all collections made directly by it derived from royalties, etc., of productions in the United States, Canada and Cuba. The Karczag Company is to make payment to the Wiener Verlag for the music and stage publishing parts in accordance with the customary amounts agreed between the Wiener Verlag and American publishing houses. At the end of each business year a balance is to be struck and of the net proceeds the Karczag Company and the Wiener Verlag are each to receive fifty per cent, but if the balance sheet shows a loss the Wiener Verlag is not to bear any part thereof, but the loss may be carried on to the next balance sheet.

The complaint alleges that, in pursuance of the foregoing contract, the Karczag Publishing Company, the plaintiff here, was organized and the Messrs. Meyer thereupon transferred to it all their right, title and interest in and to the above-mentioned contract, and that plaintiff now is the owner of " all rights, title and interest of any and every character created, established and conveyed by said contract."

The next document attached to the complaint and denominated " Exhibit B," is described as a power of attorney by which Wilhelm Karczag gives to plaintiff " the right to represent in the United States of North America, Canada and Mexico my publishing and theatrical business as well as the rights of authors and other parties represented through my publishing business," and authorizes said plaintiff " to make contract with authors, managers, publishers and any other parties, to receive moneys, to give receipts for such and to attend to all other legally binding matters."

The third document attached to the complaint, and denominated Exhibit C, is the contract which the defendants are accused of breaking. It is made between " W. Karczag of Vienna, Austria, whose representative in New York is the Karczag Publishing Co., Inc.," party of the first part, and the Shubert Theatrical Company, party of the second part. This contract provides for the production by the Shubert

Company of a certain musical play. The contract is quite specific in relation to what the defendant Shubert Company undertakes to do, and what royalties it undertakes to pay. With those matters we have no present concern, this action having to do only with alleged violations of that clause of the contract dealing with what are known as publishing rights, by which appear to be meant the right to publish songs and lyrics extracted from the play. These rights are reserved to plaintiff subject to the significant qualification " but this applies only to numbers belonging to the Karczag Publishing Co. and to no other songs or interpolations." To appreciate the significance of this qualification it is necessary to turn to an earlier part of the same clause, which reads as follows: " 2. The party of the second part further agrees that it will not make any more alterations, cuts or additions in its English version of the said play than appear to it or the producer necessary or desirable for the success of the said play, and in case the Karczag Publishing Company does not furnish interpolations satisfactory to it or the producer, or does not deliver such as may at such times prior to the production, be requested by the second party, then the party of the second part may make interpolations of any songs as may be necessary in its judgment, and to obtain such songs, musical numbers or interpolations elsewhere." The crucial point in the case, apart from the question whether plaintiff may sue at all for breach of the contract, is as to the meaning of that portion of the contract last quoted, and as to when and under what circumstances the Shubert Company was entitled to make interpolations. The plaintiff's construction of the contract is that the Shubert Company had no right to make any interpolations until it had first called upon plaintiff to furnish such interpolations as were desired, and plaintiff had refused or had produced unsatisfactory interpolations. If this be the true construction the demurrer admits that the Shubert Company has violated the contract.

We do not think, however, that the contract, which is far from clear, will bear this construction. It is evident that the play was originally written in German and doubtless was adapted for production in Germany or Austria. Naturally to produce it in English upon the American stage would

necessitate some alterations to fit it for the atmosphere in which it was to be played. Accordingly, the first words of the clause from the contract above quoted give to the Shubert Company the widest latitude in making alterations, cuts and additions, limited only by its or the producers' idea of what is necessary or desirable for the success of the play. Interpolations of course are included under the terms " alterations " and " additions. " Under certain circumstances the Shubert Company was authorized to " make interpolations of any songs as may be necessary in its judgment, and to obtain such songs, musical numbers or interpolations elsewhere " than from plaintiff. When may it so make interpolations? According to the contract (1) " in case the Karczag Publishing Company does not furnish interpolations satisfactory to it [the Shubert Company] or the producer," or (2) " does not deliver such as may at such times prior to the production, be requested by the second party."

Here appear to be two contingencies provided for separated by the disjunctive " or." The first contingency is that the plaintiff, without any request, fails to furnish satisfactory interpolations. Doubtless it was well understood by the plaintiff as by the Shubert Company that some alterations and interpolations would be necessary to fit the production for the American stage. Anticipating this the plaintiff when it delivered the words and music of the play might have delivered proposed interpolations for the consideration of the producer. Or the Shubert Company, finding some interpolations necessary, might have preferred, for the sake of artistic consistency, that the same hands that wrote the play and the music should also write the interpolations, and for that reason have requested plaintiff to furnish them. If these were the thoughts in the minds of the contracting parties it is easy to understand why the two contingencies were inserted. Upon any other theory it is not so easy to understand. But in any event the clear meaning of the clause was that the Shubert Company, or its producer, was to be the sole judge of what alterations, cuts or additions, were necessary, and were bound to accept only such interpolations as it or he found satisfactory. We do not think that the clause can reasonably be construed as limiting the Shubert

Company in obtaining satisfactory interpolations, so that it could seek them elsewhere only after the plaintiff had been requested to furnish them and had refused, or had furnished unsatisfactory ones.

This construction makes the contract at least intelligible and consistent. For the musical numbers which the Shubert Company obtained from W. Karczag or from plaintiff the publishing rights were reserved to the latter. For the interpolations which the Shubert Company obtained elsewhere it retained the publishing rights, and as it is only regarding these latter numbers that plaintiff complains it follows that it has no cause of action.

It is suggested in the complaint, somewhat vaguely, that whoever wrote the interpolations complained of borrowed from the original score and book of the play in question, but no damages are asked upon this score, and indeed it is conceded that whatever was done in this regard was so done as to avoid any prosecution for violation of copyright.

A further point is made by the appellants which seems to be serious. It is that the plaintiff has no standing to sue upon the contract, Exhibit C, because it was not a party to it, the party of the first part being W. Karczag of Vienna. From all of the documents attached to the complaint and hereinbefore summarized it is apparent that plaintiff is merely the agent in this country of Wilhelm Karczag; that whatever collections it makes are made for said Karczag, and that the only interest plaintiff has in such collections is the stipulated percentage it is entitled to retain, and fifty per cent of the profits at the end of the year, if there are any. The contract is made by Karczag and plaintiff is concededly not a party to it. It is not, therefore, " a person with whom or in whose name a contract is made for the benefit of another," and is not, therefore, competent to sue. (Code Civ. Proc. § 449.)

For these reasons the order appealed from must be reversed, with ten dollars costs and disbursements, and the demurrer sustained, with costs.

LAUGHLIN, DOWLING, SMITH and DAVIS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and demurrer sustained, with ten dollars costs.